UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ELAYNE ORANGE,                                  :
                                                :
                          Plaintiff,            :
                                                :
              -v-                               :
                                                :
LEAKE AND WATTS INC.,                           :
                                                :
                          Defendant.            :
                                                :
------------------------------------------------------------:
                                                X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 15, 2015
```

13-cv-6110 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

On August 28, 2013, pro se plaintiff Elayne Orange, an African American assistant teacher at the Biondi School, brought this action against Leake and Watts, Inc., who runs the Biondi School, alleging discrimination and retaliation based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.  (ECF No. 2.)  Plaintiff alleges that she suffered an adverse employment action when she received a written disciplinary notice following her perceived racist comments about an Asian teacher and a negative performance evaluation for failing to work effectively with her head teacher.

On August 16, 2012, plaintiff filed a charge of discrimination against defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and retaliation.  (See Compl. at *11-29.)  On June 28, 2013, the EEOC issued a Notice of Dismissal and Right to Sue, finding that "the evidence you provided does not show that Respondent discriminated against you" and "[t]he investigation did not uncover evidence in support of your allegations."  (Id. at *6.)

Plaintiff timely filed this lawsuit.  On December 9, 2014, defendants moved for summary judgment on all claims.  (ECF No. 33.)  On March 6, 2015, this case was reassigned to the undersigned.

For the reasons set forth below, defendant's motion for summary judgment is GRANTED.

I.    FACTUAL BACKGROUND[1]

Plaintiff, an African American woman, worked as an assistant classroom teacher at the Biondi School beginning in 2011.  (Statement of Undisputed Material Facts ("56.1 Statement") ¶ 7, ECF No. 35.)  She was initially assigned to the classroom of head teacher Samara Cantor, a Caucasian woman.  (Id. ¶ 8.)  On December 9, 2011, Dr. George Cancro, the school's principal, reassigned plaintiff to a different classroom after Ms. Cantor repeatedly complained about difficulty in working with plaintiff.  (Id. ¶ 9-10.)  The following week, plaintiff and Ms. Cantor had a confrontation in the hallway after school.  (Id. ¶ 11.)  On December 16, 2011, plaintiff submitted a written report of the incident.  (Id. ¶ 12.)   Dr. Cancro verbally reprimanded both teachers, but neither teacher received any other form of discipline.  (Id. ¶ 14.)  On January 26, 2012, plaintiff submitted a written report to Dr. Cancro claiming that Ms. Cantor was stalking and harassing her by passing through the hallway where plaintiff's new classroom was located.  (Id. ¶ 15.)

---

[1] The following facts are taken from the Complaint (ECF No. 2) and the Local Rule 56.1 statement submitted by defendant in connection with this motion for summary judgment (ECF No. 35) only insofar as they cite admissible, relevant material and are not contradicted by admissible evidence. See Local Civil Rule 56.1(d).  The following facts are materially undisputed and all inferences are drawn in favor of plaintiffs.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Neither her December 16, 2011 incident report nor her January 26, 2012 written complaint alleged any connection to plaintiff's race.  (Id. ¶ 15-18.)

In a separate incident in March or April of 2012, plaintiff and the other teachers assigned to her classroom were having trouble maintaining order in the classroom.  (Id. ¶ 19.)  Plaintiff went into the hallway and told two colleagues that her Asian coworker, whom she referred to as "Miss Jenny", could not keep control over the classroom because no one understood her "Yada Yada Yang Yang stuff." (Id. ¶ 21.)  On April 16, 2012, Dr. Cancro issued a written notice of discipline to plaintiff for violating defendant's anti-harassment policy which prohibits conduct that is "offensive or otherwise makes someone feel uncomfortable", including "negative stereotyping" and "denigrating jokes".  (Id. ¶ 22; Compl. at *9.)  On April 28, 2012, plaintiff refuted the written notice of discipline and complained that she was being subject to discrimination because she had been disciplined for the "Yada Yada" comment while Ms. Cantor had never been disciplined for the alleged stalking.  (Id. ¶ 23.)  Plaintiff again did not complain that Dr. Cancro's failure to discipline Ms. Cantor had any connection to plaintiff's race; at her deposition, plaintiff testified that she believed Dr. Cancro's actions were rather motivated by some type of familial connection to Ms. Cantor.  (Id. ¶ 24-25.)

In June 2012, plaintiff received her performance evaluation for the time period July 1, 2011 to May 31, 2012, which concluded that plaintiff "needs improvement" in certain areas: (1) "establish a team approach with the teacher", (2) "work collaboratively with teacher in assisting students", and (3) "maintain a

positive interpersonal relationship with staff." (<u>Id</u>. ¶ 31.)  The evaluation was

completed by Myra Fern, Assistant to the Superintendent, who regularly observed

plaintiff's performance in the classroom.  (<u>Id</u>. ¶ 27.)  Ms. Fern did not receive or

have knowledge of plaintiff's April 28, 2012 letter of complaint before issuing the

performance evaluation.  (<u>Id</u>. ¶ 32.)  Dr. Cancro, however, did review the evaluation;

he did not provide any suggestions to the evaluation report.  (<u>Id</u>. ¶ 33.)  Ultimately,

despite the performance evaluation and the written notice of discipline, plaintiff

continued her employment in the same position and at the same salary.  (<u>Id</u>. ¶ 34-

35.)

## II.   LEGAL STANDARDS

### A.   <u>Legal Standard for Summary Judgment</u>

Summary judgment may not be granted unless all of the submissions taken

together "show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

moving party bears the burden of demonstrating "the absence of a genuine issue of

material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  In making that

determination, the court must "construe all evidence in the light most favorable to

the nonmoving party, drawing all inferences and resolving all ambiguities in its

favor."  <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's

claims cannot be sustained, the opposing party must "set out specific facts showing

a genuine issue for trial," and cannot "rely merely on allegations or denials"

contained in the pleadings.  Fed. R. Civ. P. 56(e); <u>see also</u> <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks, alteration, and citation omitted).

Only disputes over material facts – i.e., "facts that might affect the outcome of the suit under the governing law" – will properly preclude the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

"Summary judgment is appropriate even in discrimination cases, for, as [the Second Circuit] noted, 'the salutary purposes of summary judgment – avoiding protracted, expensive[,] and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation.'" <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (quoting <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985)); <u>see also</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 148 (2000) (explaining that "trial courts should not treat discrimination differently from other ultimate questions of fact") (internal quotation marks and citation omitted).  Nonetheless, courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question."

5

Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (citation omitted).

"Because direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Id. (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

      B.    Legal Standard for Title VII Discrimination Claim

To establish a prima facie case of discrimination under Title VII, plaintiff must show that: (1) she belonged to a protected class, (2) she was qualified for the position she held, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. See Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009). Although "the central statutory purpose [of Title VII is] eradicating discrimination in employment, Title VII does not set forth a general civility code for the American workplace." Redd v. New York Div. of Parole, 678 F.3d 166, 176 (2d Cir. 2012) (alteration in original) (internal quotation marks and citations omitted). "It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis added).

In situations in which there is no direct evidence of discrimination, Title VII discrimination claims use the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff bears the initial burden of establishing a prima facie discrimination claim; if plaintiff meets her burden, the

production burden shifts to the employer to provide "a legitimate, clear, specific[,] and non-discriminatory reason" for the adverse action.  Hold v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996).  If the defendant meets its burden, plaintiff must prove the legitimate non-discriminatory rationale provided by defendant is a mere pretext.  Id.

      C.    Legal Standard for Title VII Retaliation Claim

Pursuant to Title VII, an employer may not discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

"Protected activity for purposes of Title VII and NYSHRL retaliation claims encompasses an employee's complaint to supervisors about alleged unlawful activity, even if the activity turned out not to be unlawful, provided that the employee 'had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII.'" Rodas v. Town of Farmington, 567 Fed. Appx. 24, 26 (2d Cir. 2014) (quoting McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001)).  "The objective reasonableness of a complaint is to be evaluated from the perspective of a reasonable similarly situated person."  Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013).

Moreover, plaintiff's complaint must "have allowed her employer to have reasonably understood that [plaintiff's] opposition was directed at conduct

prohibited by Title VII." Id. at 17 (internal quotation marks, alterations, and citations omitted) ("Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."); see also Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502 (S.D.N.Y. 2010) (Lynch, J.) (explaining that plaintiff's retaliation claim failed because "the overall content and context" of plaintiff's complaints did not in any way suggest that the admittedly detrimental conduct was harmful because of "a protected characteristic").

As with Title VII discrimination, retaliation claims are evaluated under a burden-shifting analysis. See, e.g., Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (citations omitted). First, a plaintiff must make out a prima facie case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001). The defendant then must articulate a legitimate, non-retaliatory reason for the alleged retaliatory conduct. Quinn, 159 F.3d at 768-69 (citations omitted). If defendant meets that burden, "plaintiff must adduce evidence sufficient to raise a fact issue as to whether the employer's reason was merely a pretext for retaliation." Id. (internal quotation marks, alteration, and citation omitted).

8

The Supreme Court recently held that "a plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 133 S.Ct. 2517, 2534 (2013). "Close temporal proximity between the plaintiff's protected action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." <u>Kaytor v. Electric Boat Corp.</u>, 609 F.3d 537, 552 (2d Cir. 2010). Alternatively, a plaintiff may produce direct evidence of retaliatory animus against plaintiff by the defendant. See <u>Taylor v. Seamen's Soc. For Children</u>, No. 12 Civ. 3713, 2013 WL 6633166, at *20 (S.D.N.Y. Dec. 17, 2013) (citation omitted).

III.   DISCUSSION

   A.   <u>Title VII Discrimination Claim</u>

To establish a <u>prima facie</u> case of discrimination under Title VII, plaintiff must show that: (1) she belonged to a protected class, (2) she was qualified for the position she held, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. See <u>Sassaman v. Gamache</u>, 566 F.3d 307, 312 (2d Cir. 2009). There is no dispute that plaintiff belongs to a protected class and is qualified for the position. However, plaintiff fails to demonstrate a triable issue on the third and fourth prongs.

Plaintiff claims that her disciplinary notice and negative evaluation constitute adverse employment actions. However, "[a] plaintiff sustains an adverse

9

employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." <u>Galabya v. New York City Bd. of Educ.</u>, 202 F.3d 636, 640 (2d Cir. 2000). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." <u>Id</u>. (quoting <u>Crady v. Liberty Nat'l Bank and Trust Co.</u>, 993 F.2d 132, 136 (7th Cir. 1993)). Here, plaintiff does not allege a single negative consequence of her disciplinary notice or performance evaluation outside of simply receiving the documents themselves.  There is no evidence in the record of her being terminated, demoted, given a lesser title, given lesser responsibilities, or given lesser pay and benefits; accordingly, neither the disciplinary report nor the negative evaluation would reasonably deter a similarly situated person from engaging in protected activity.

In addition, there is no triable issue giving rise to an inference of discriminatory intent.  Plaintiff makes no supported allegation of racial discrimination by the school nor can she point to similarly situated employees who were treated differently.  Plaintiff's allegation that there was differential treatment because she received a disciplinary notice for mocking her coworker's accent while Ms. Cantor did not receive a disciplinary notice for stalking her is unavailing. These two actions are quite different: one involves a derogatory comment initiated by plaintiff herself and directed at a co-worker, while the other has to do with an interpersonal conflict that plaintiff conceded at her deposition had no connection to

10

plaintiff's race.  (See 56.1 Statement ¶ 24-25.)  Plaintiff's opposition papers focus on the personality conflict between herself and Ms. Cantor and Dr. Cancro without citation to a single non-conclusory instance where the conflict was linked to race. That Ms. Cantor and the principal Dr. Cancro are Caucasian while plaintiff is African American is, as a matter of law, insufficient to show an inference of discriminatory intent.  See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic.")

Accordingly, plaintiff is unable to establish a prima facie case of discrimination.  Even assuming arguendo that plaintiff could establish a prima facie case, defendant can rebut any presumption of discrimination by putting forward legitimate, non-discriminatory reasons for issuing the discipline notice and negative evaluation.  Plaintiff argues that she did not violate defendant's anti-harassment policy because "Miss Jenny" herself did not report plaintiff to the principal; however, that her two co-workers reported the comment to the principal shows that at the very least those teachers were made to "feel[] uncomfortable about such conduct occurring in the workplace", in violation of the policy.  It is undisputed that Ms. Fern, who put together the performance evaluation, had no knowledge of plaintiff's April 2012 letter of complaint.  There is simply no evidence demonstrating that the discipline and a negative evaluation were based on anything but non-discriminatory reasons.

B.    <u>Title VII Retaliation Claim</u>

To establish a <u>prima facie</u> case of retaliation under Title VII, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 282-83 (2d Cir. 2001).  Plaintiff bases her retaliation claim on the negative performance evaluation she received two months after complaining of discrimination.

Plaintiff fails to establish the third and fourth prongs of a retaliation claim. Defendant took no adverse employment action against her.  As explained <u>supra</u>, the negative evaluation did not constitute an adverse employment action because it did not carry any other consequences to plaintiff and would not reasonably deter a similarly situated person from engaging in protected activity.  In addition, there is no causal connection between plaintiff's letter to Dr. Cancro complaining of discrimination and the performance evaluation written by Ms. Fern.  It is undisputed that Ms. Fern had no knowledge of any claims of discrimination and that Dr. Cancro did not prepare the evaluation.  That the protected activity occurred two months prior to the evaluation is insufficient to show retaliation.  <u>See</u> <u>Dixon v. Int'l Fed'n of Accountants</u>, 416 Fed. Appx. 107, 110 (2d Cir. 2011) ("To the extent she relies on the temporal proximity between these two events as circumstantial evidence of causation, that, standing alone, is insufficient.").  Even assuming <u>arguendo</u> that plaintiff could establish a <u>prima facie</u> case, the record

12

overwhelmingly demonstrates that defendant had a legitimate, non-discriminatory reason for indicating in the evaluation that plaintiff "needs improvement" in areas regarding her relations with other teachers: plaintiff had to be reassigned to another classroom after failing to develop a working relationship with Ms. Cantor and she made a remark about another teacher that sufficiently disturbed at least two other teachers.  That plaintiff happens to be African American is insufficient in and of itself to sustain a claim of retaliation.

IV.    CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to close the motion at ECF No. 33, and to terminate this action.

SO ORDERED.

Dated:      New York, New York
            May 15, 2015

_____
      KATHERINE B. FORREST
      United States District Judge

cc:
Elayne Orange
150 Dreiser Loop #8A
Bronx, NY 10475